Are you ready, Mr. Rainey? I am, Your Honor. You may proceed. Good morning. It may please the Court. Respectfully, I submit the District Court in this case erred when it dismissed Juniper's amended complaint pursuant to Rule 12b6. The District Court respectfully did not accept the facts as pleaded by Juniper as true, and it did not draw all reasonable inferences in Juniper's favor as governing Ninth Circuit law requires. We said in the Stoffer opinion that this is like fraud, you follow Federal Rules of Civil Procedure 9b, and that requires great particularity in your pleading. He simply found you didn't satisfy that particularity. Why not under 12b6? I would submit, Your Honor, even if you apply 9b to the pleading in this case, we more than satisfied the particularity of 9b. But that's a heightened standard. Do you agree with that? 9b is absolutely a heightened standard over Rule 8. I agree with that, Your Honor. But I would submit this complaint satisfies 9b in spades as compared to what a plain notice pleading complaint would contain. Let me be more specific. Juniper alleged that Mr. Shipley placed upon his website the word patent together with two patent numbers at a time when his website contained no software. But that patent was listed in the context of current projects, not in the context of any money generating aspect of his website. Isn't that correct? I disagree with that, at least the latter aspect of that. It certainly was listed in the context of current projects. And we've alleged that that leads to a more than reasonable inference that he was suggesting, in fact, that software was currently functioning, which is what he said, on his website. And in fact, we know from his interrogatory answers, which is how we learned about this, that that software was, in fact, functioning at one time, but had, through the crash of a server, no longer functioned after 1999. So the patented firewall is separate from the website, is it not? Well, according to the interrogatory answer from Mr. Shipley himself, it functions in connection with the website, Your Honor. But they're two different things. Obviously, they go hand in glove. The firewall is going to protect whatever is on a computer or a server. If a website is on a computer, it's protected by a firewall. But the firewall doesn't really care what's on the computer. It protects everything that's there. One may benefit from the other, but they don't interact, correct? I disagree that they don't interact. One is a necessary protector to the other. But regardless, I don't think the statute, I don't think it matters under 292 whether they function together or not. So what is the article here that is falsely marked, the website? We've argued that it's the website, components of the website, and web pages that are marked under either the marking, the affixing, or the advertising prong of Section 292. Let me try an analogy and see if this might help in the discussion. Let's suppose I'm selling toothbrushes in a box. And on the box, I put a statement that says, contains toothpaste covered by patent number so and so. And in fact, the patent does cover that toothpaste. But the box that I sell doesn't have any toothpaste in it. Okay? Now, am I guilty of false marking? I mean, I'm selling, the article is a toothbrush. The box has a patent number on it, and that patent doesn't cover a toothbrush, it covers something that's missing. Is that false marking? If there is no embodiment of toothpaste that exists either in that box or elsewhere, I would argue yes. That is false marking. Maybe it's deceptive advertising, but it's not false marking, is it? Because 292 talks about marking, let's look at the exact language here, whoever marks upon or affixes to or uses in advertising in connection with any unpatented article to with the toothbrush, the word patent or any number, importing that the same as patented. In my hypothetical, the statement is crystal clear, contains toothpaste. So it would be hard, it seems to me, for somebody to suggest that that imports that the toothbrush is covered by that patent. I would agree it's not importing the toothbrush is covered by the patent, but if there is not toothpaste somewhere, either in that container or elsewhere, that is covered by that claim, at least one claim of that patent, that is false marking. But he never says this website is protected by patent number. He doesn't ever say that. I would argue an inference is, in fact, he does. Isn't that an unwarranted inference? No, I don't believe it's an unwarranted inference, but moreover, the statute requires far less than that. The statute says if you place the word patent on a website, then you are saying this is covered by the patent. And in fact, in this court's case law, may or may not was deemed by this court to be sufficient. So I can't put a patent on the website just to kind of aggrandize my own abilities, as almost a resume builder? Absolutely, you can do that, Your Honor, and that's not the situation we have here at all. The context, the way these patent numbers were placed on this website, bold, italicized, underlined, with asterisks in the front and in the back, together with the word functioning, which was changed, by the way, from the earlier description when the patent was merely pending. There it was a qualified functioning. Actually, the word functioning was misspelled. So Mr. Shipley, at a time when there was no software not only operating in connection with the website, but anywhere that was covered by any claim of either patent, he changes that qualified description of functioning to simply say functioning. I'm going to hit you with that horrible thing that you never anticipate, Mr. Rainey. On page A202 of the appendix, in footnote one, there's a reference to Mr. Koonin, who is the Director of Licensing for Juniper, and he says in a conference, the only cases in which we are actually plaintiffs are cases that were filed to gain leverage against parties. You want to exert pressure. You want to try to drive up those costs as much as possible. Why isn't the district court entirely justified in cutting off, as early as possible, a case which is only brought to gain leverage, to drive up costs as much as possible? Well, first of all, Your Honor, the issue we are confronted with in this appeal is whether this complaint satisfies Rule 12b-6 and a high particularized level of pleading required by 9b. Right. None of these allegations, none of these facts, as you see in this footnote, are part of that analysis, Your Honor. The question is, accepting the facts as Juniper pleaded is true, coupled with the reasonable inferences that Juniper is entitled to, does that complaint pass the minimal threshold of Rule 12b-6? I submit that it is more than adequate to pass that threshold. Now, Your Honor's question goes to probing the motives of a plaintiff in a lawsuit. If we want to go out and probe the motives of plaintiffs in lawsuits, Your Honor, we might have a very different kind of situation. You'll recall that Mr. Shipley and his two-man shop sued Juniper in the Eastern District of Texas looking for money from an American company that invests a lot of capital, a lot of human resources in this country. Juniper, like every other legitimate litigant, looked in its storehouse for counterclaims which are perfectly permissible under the law. There is no allegation in this case that Juniper violated Rule 11 or committed any other sanctionable act here. That is merely a passing reference and a footnote which I think is frankly unwarranted in this dispute. I'd be happy, Your Honor, if we want to make motives of plaintiffs relevant in these kinds of disputes, then my adversary's client and his motives in terms of what he was up to are equally valid when we consider the merits of any kind of a patent dispute. So going back to the question, Your Honor, that you raised before about pleading, we have pled that the patent number and patent were placed on this website that is either marked upon, affixed to, or an advertising in connection with a something, an unpatented article, I would submit, which at one time existed but no longer does. That is the software that runs the firewall. It is undisputed that when that patent and those patent numbers were put on there, there was no software anymore that met any claim of those patents. We further pled that that is a false statement and that Mr. Shipley knew that was a false statement. That, I submit, is all we need to pass muster under Rule 12b6. We have a lot more in this complaint, Your Honor, including the motives of Mr. Shipley in terms of what he did as well as the contextual language that appeared around those statements. I'm into my rebuttal. Another kind of policy point. I picked up a website that said that 800 of the 3,000 cases, patent cases, filed last year were false marking cases. How does that affect our analysis here? Is there some, is it perhaps warranted for this court to find ways to limit those cases to the ones that are really warranted and weed out early those that seem to have less basis? I think this court answered the question that you're asking in the Bond Tool case. Where this issue of a floodgate of lawsuits was raised specifically. And this court said, well, our hands are tied by Congress. Congress has passed a statute. The statute is fairly straightforward in its application. That said, this court has utilized, for example, intent as a possible vehicle by which one can police these kinds of claims. This is a 12B6 appeal. Very different, for example, from the kinds of cases this court has examined before. We get a presumption of intent in this case based on the allegations we have pleaded. Thank you, Mr. Brady. Let's hear from Mr. Kolfaber. Good morning. Kolfaber, representing Defendant Appley Peter Shipley. May it please the court. The district court properly dismissed this case under Rule 12B6. And that ruling should be affirmed for at least two separate reasons. First, this claim is barred by the statute of limitations. It is undisputed in this case that the applicable statute of limitations is found at 28 U.S.C. Section 2462. And that statute specifically provides that such cases shall not be entertained unless commenced within five years from the date when the claim first accrued. Not when it was most recently viewed, not when it was or could have been discovered, but when it first accrued. And it's undisputed in this case that the alleged acts by Mr. Shipley are statements that he posted on his website in 2000 and 2001. And yet this case was not brought until 2009, more than seven years later. Now, Juniper in its papers relies on the theory of continuous act or the fact that this information on the website remained viewable into the limitations period. But no court has ever construed the operation of the Internet and websites in that way to avoid the clear directive of a statute of limitations. In fact, the case that the district court relied on, the OJCA case from the Ninth Circuit, clearly held that the posting of a statement on a website is a single discrete act, even if it was continually maintained on a server after that. And in the OJCA case, the Ninth Circuit said that a claim based on an Internet posting is time barred, even though the posting existed and was viewable into the limitations period. So based on the undisputed facts as pled by Juniper, this claim, to the extent there is any claim at all, was fully accrued in 2001 and the complaint was not filed until 2009. So this is absolutely barred by the statute of limitations. Now, Your Honor, what about the argument that each continuing act of placement of the patent numbers on the website, or I guess it's more appropriate to say the continuing placement of the patent numbers on the website represent continuing acts and each one triggers another five year period? There's at least three problems with that, Your Honor. First, when somebody from the public chooses to visit the website, that is not an independent act by Mr. Shipley. Second, it's not the marking of it. Is there not an act on his part in taking it down? I don't believe there is, Your Honor. And it was, again, this is precisely the issue that was addressed by the OJA case, and this is in the joint appendix at A103, where the district court relied on it. Juniper has cited no cases where a statute of limitations was extended simply because something originally posted on a website remained there for some period of time. If your argument is correct, that means somebody can pay $500 and go on misleading the public forever, right? It means that a posting... One violation, I'll pay $500 and just post it up there forever. And that's specific... See who I can deceive, maybe even make money off the deception. That's specifically the issue that was addressed by OJA, where the Ninth Circuit recognized that the fact that this information remained available that some members of the public might find objectionable was a factor, but that was overweighed by the fact that it would trigger an endless re-triggering of statutes of limitations and would allow claims based on old postings to basically multiply and proliferate. And finally, with respect to the... OJA actually involved a Privacy Act claim, though that's kind of only tangentially relevant to a forthright marketing strategy that is deceptive. But it also cited a number of defamation cases where the same principle applied. And I think those are more closely analogous to what we have here. In a defamation action, something is posted on a website that somebody believes is false or somebody believes is objectionable, and the court specifically said, we recognize that even though that may be available and additional people may see it and there may be some associated injury with that, it's still not enough to overcome the clear application of the statute of limitations. I would also comment, Your Honor, that in Juniper's papers and arguments to the district court, they asked that the statute of limitations should be extended based on equitable tolling or equitable estoppel. And that's why we cited the reference to the comments by Juniper's in-house counsel, because if they claim they're entitled to an equitable tolling of the statute of limitations to be able to bring this case, then I think they need to show that they're entitled for some equitable reason to get the benefit of that. And given their publicly stated intentions of this lawsuit, we don't believe equitable principles should apply. Furthermore, Juniper has cited no case where equitable tolling was applied to a statute of limitations in the context of a KETAM action such as this. I'd like to turn now to the second major problem with this case, which is more closely tied to the basis that the district court issued its second order. And that is, there is no article within the meaning of the statute itself. Now, Juniper has cited to at least seven different things as maybe being the allegedly marked article. They've cited, they said the website itself is the alleged article, web pages generated by the website, software running in the background, any firewall product operating on the website, any other security product operating on the website, consulting services or email hosting services. All of these are pointed to as maybe being the allegedly patented article. I submit that if Juniper can't even decide what is the allegedly patented article, then the markings that they're complaining about in this case do not provide clear notice to the public of what it is that's allegedly patented that isn't, which is the whole objective of the false marking statute in the first place. What is your position as to what the article is in this case? We don't believe that there's any article that's been marked, Your Honor. And I think it's... The website? Certainly not the website. Why not? Because if you turn to the joint appendix at page A141, 142, and 143, this is a printout of the portion of the website where Juniper's allegedly objectionable material is found. Now, this is not a printout of the website itself. This is just one corner, one portion of the website that's directed to current projects. And when you look at this, you see several projects are listed on the first page. So somebody who accesses this particular portion of the website goes here, and then you scan down over the second page, and then there at the bottom of A142, you see a discussion of the dynamic firewall product and a reference to the two patent numbers. This is exactly the same language that's been posted on his website since 2001. What the district court said was they looked at these references to the patent in the context of this project page and found that there is simply no reasonable basis to infer that this is intended to mean that the entire website is patented. They rejected that automatically. So that ties into their continuing injury argument. If the marking cannot apply to the website as a whole, then there's no continuous act. There's no additional articles that are being marked as it goes into the future. But why is it unreasonable to conclude that the article in question is the website, and every website has pages, and everybody recognizes that those pages are part of that website? If you look at the... Isn't that a reasonable way to look at this in terms of sort of the first step? What is the article that you're talking about? It's not a reasonable inference, Your Honor. And if you look at the bottom of A142, where the patents are specifically mentioned, the words that appear right before the patent numbers are dynamic firewall. So the only reasonable inference that can be drawn from these words that appear in this context is that Mr. Shipley and his friends were working on a project relating to a dynamic firewall that somehow relates to these patents. I understand your argument, but that seems to me to be addressing a separate question. My question is simply, what is the article that you're talking about that has been falsely marked? And is it the website? And why isn't it the website, including all of its pages? It's not a website because the context in which these numbers appear specifically relate to a dynamic firewall, which is the court recognized earlier, is different than the website itself. And also because if it was ever the intention by these postings to communicate that the website itself was covered by this patent, there's lots of ways that could have been done. There's lots of ways that could have been clearly stated. Let me approach it this way. Just hypothetically, is a website something that is subject to the marking requirement under 287? Courts have considered that issue. And at least one or two courts have considered that it's theoretically possible that a website could be marked for purposes of 287. So let's assume that a website could be marked and is therefore an article subject to the marking requirement. In satisfying that marking requirement, would it be sufficient to place the patent number for that website on a page? It would not, Your Honor. And that issue has been specifically addressed by the District of Delaware in the IMX case, which is one of the cases that Juniper relies on heavily in its papers. There, the court considered a website run by the patentee. There was a discussion on that website of some patents, so the patent numbers appeared on a portion of that webpage. And the patentee was trying to argue that that should count as marking under 287 of some other products that could be accessed on other portions of the webpage. But the court said while it's theoretically possible for a website to bear a marking, in that case, there was no clear nexus between the discussion of the patents and the allegedly patented products that the patentee wanted to tie it to. Therefore, it did not satisfy the requirements of 287 to give clear public notice. So you would argue then that if a website is subject to the marking requirement, the marking has to be on the homepage? I think it certainly would. Prominently connects the patent to the website. It needs to be connected to something with some level of clarity and specificity in order to provide notice to the public of what it is that's allegedly covered by the patent. All of the cases that have dealt with 287 and 292 have noticed the public notice function of these statutes, where a patentee not just talks about the patent itself, but says also here is an article. This is an example that you can see, you can use, you can test, you can inspect. And then this is what you cannot copy. Without some clearly identified and at least somewhat publicly accessible article, the whole purpose of either the marking statute or the false marking statute don't make any sense. And Juniper has cited no case, and we believe there are none, where either the marking or the false marking statute was applied in a context where there was not any publicly available article, whether it was actually for sale or otherwise. And these are purposes of the marking and the false marking statute that this court has expressly recognized recently in both the Forest Group case as well as the Clone Tech case. The whole purpose is to prevent people from holding out an object to the public, telling them it's patented, you can't copy this when that might not be true. In sum, Your Honor, what Juniper is arguing here is an overly expanded reading of the statute. What they're complaining about is the use of the word patent in some sort of commercial context. But if you look at the description and the mention of the patents itself on A142, continuing to A143, there's no mention here about services. There's no clear link between these patent mentions and anything else that Mr. Shipley is providing. Juniper did not submit actual copies of the webpage with its complaint. They simply selectively quoted from completely disparate portions of the website and then are asking this court to draw all sorts of inferences to string those together. Mr. Fowler, I know the district court didn't rely on this, but did Juniper actually plead intent with the particularity necessary to satisfy 12b? I don't believe they did. The Juniper is relying on the cases that talk about knowledge that a statement is false. And what the district court found, they found in the original dismissal that there was no intent sufficiently pled. The district court gave Juniper leave to amend their complaint. Juniper amended their complaint. They added lots of facts and then they filed an amended complaint. But the district court basically couldn't even get off the ground on that one because they didn't agree with Juniper's interpretation of the words that were posted on the website in the first instance. So simply because Mr. Shipley knew, or the allegation is that he knew that a certain server in his home wasn't operating anymore, does not mean that this statement is false. And if without clear knowledge of a statement that you also know is false, there can be no inference that there was wrongful intent. Finally, Your Honor, 292 is a penal statute. It's supposed to be strictly construed. Juniper is asking this court to adopt a very broad reading of it that would allow causes of action based on any time you use the word patent in any kind of a context. But the statute's very clear. You have to mark an article, or you have to affix it to an article, or you have to use it in advertising, not for something else, but in advertising for the allegedly patented article. And Juniper cites no case in support of these different propositions, no case which allows a claim like this to go forward without a publicly available article. It overly would interpret a statute that's supposed to be construed narrowly and would really open the door to multiple additional false marking cases. If there are no other questions, thank you. Mr. Rainey, you have over three minutes. Thank you, Your Honor. On the statute of limitations, Juniper did plead very specifically that each time a web page is loaded, that's a separate act of marking. In addition, Juniper has pleaded facts which we submit would entitle it to equitable tolling. The Ninth Circuit has made it clear that on a 12b6 motion, resolution of equitable tolling is improper, absent extraordinary circumstances. My adversary is pointing to conduct of Juniper. This was a nice closing argument, but this is 12b6. That's an improper kind of argument given the context of the case as it stands. In addition, we have in the record... Mr. Rainey, let me interrupt for a second. Did you say a minute ago that your pleading was that every time somebody opens the website, that's a separate act? Yes, Your Honor. Because that's the way websites operate, Your Honor. Those are acts by parties that are unrelated to the operator of the website. I disagree. Once I do one little error, then I have no way to control my damages. They could go forever. People could be accessing this website into perpetuity and charging me $500 a pop. That can't be right either. Millions of hits every week. The... This is an aspect of websites that makes software, you know, one of the issues, one of the challenges we have to deal with in patent law. It is a new technology. But software, like in the Solo Cup case, where you have a stamp that can stamp out billions, in that case, of cups with a patent number on it, a website can proliferate a patent and information about a patented product very easily. But... But the purveyor of cups and cup lids knows exactly how many are being sold and can control it one way or the other. Or change the dye. And a website owner knows when his website is having hits made on it. And the nice thing about this... They can't control how many. Ah, but they can change that website in the snap of a finger, unlike the Solo Cup case. Well, that could be an act of the website owner, of course. Absolutely. And the website owner, in this case, Mr. Shipley, even if you were to focus on his making alterations to the webpage, we have webpages in the statute of limitations period that he altered. Those are... Those are at A195 and A199 of the record, where he was making changes to these very pages, knowing people are hitting his website every day, knowing this information continued to be on there. He continued to leave this information on there even after the false markings lawsuit was filed against him. So I would submit there's more than adequate evidence of at least one actionable claim, which is all we need on 12b6. This issue of scope of remedy is an issue we can deal with when the case moves forward. Does it matter that the marking that we've been talking about appears on a page of the website and not the homepage? I don't think it matters, particularly given the way this language is set forth here. There's no requirement in statute that a marking appears in the most obvious place, for example. The law is clear. A marking is a marking. If it appears anywhere on the website, even a third, fourth, fifth tier page within a page within a page kind of thing, that's okay? Well, if you... For example, I can get in your hypothetical of five pages down, I say, by the way, my website is covered by the following patent. I don't think we even have a dispute. You didn't say that, though, did you? No, but it's not... Dynamic firewall is, maybe, but nothing more. Well, but dynamic firewall, which shields are holding, Captain, and it's functioning. When those statements are absolutely, indisputably false, there was no shields holding, Captain, and there was no functioning software. That's the problem. Maybe a patent number in the abstract is fine. That's not the fact pattern we've alleged. It's not the inferences we're entitled to. This is a 12b6 motion. Let's suppose that his firewall hadn't crashed, that it was there, but that one day he decided to turn it off and left it off for a week. Would that mean that there's been false marking for that week? I don't believe so, Your Honor, because at that point you have a apparatus that could perform, was capable of performing the function. I think that's a very different kind of a situation. But, again, you're complaining about the fact that the notice says, you know, shield's holding and functioning, and that's not correct in this fact pattern. And yet, in my hypothetical, the same thing is true. It's off, so it's not holding and it's not functioning. I think in that context, however, you still have a patented product sitting out there. When the product is destroyed, you no longer have a patented product. So, yeah, you start to get, factually, a little bit more complicated when you say a situation like that. But the reality is that may go well to intent as well. But he still has a patented product. It's just not on his website. He has no patented product. That's undisputed. There is no longer an embodiment. Well, he has it on paper. He has got it on paper, but that's exactly what the false marking statute is directed to. If having something on paper was enough, you'd never have false marking. Final comment for us, Mr. Rainey? Final comment is, Your Honor, I think we have more than adequately pled facts sufficient to get us through the 12B6 standard, and we'd ask this court to reverse. Thank you very much. Thank you very much.